IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PIT VIPER, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ZHENGMINGHUI05 and THE INDIVIDUALS AND ENTITIES OPERATING ZHENGMINGHUI05, <br><br> Defendants. | Case No. 24-cv-01999 <br><br> **Judge Sharon Johnson Coleman** <br><br> **Magistrate Judge Maria Valdez** |

**AMENDED COMPLAINT**

Plaintiff Pit Viper, LLC ("Plaintiff" or "Pit Viper") hereby brings the present action against zhengminghui05 and the Individuals and Entities Operating zhengminghui05 identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Pit Viper's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Pit Viper substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Pit Viper to combat e-commerce store operators who trade upon Pit Viper's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including performance gear, eyewear, sunglasses, apparel, and accessories using infringing and counterfeit versions of Pit Viper's federally registered trademarks (the "Counterfeit Pit Viper Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Pit Viper Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Pit Viper is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Pit Viper Products over the Internet. Pit Viper has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff Pit Viper is a limited liability company organized and existing under the laws of the State of Utah, with an office and principal place of business at 159 W. Haven Avenue, Salt Lake City, Utah 84115.

5. In 2012, Chuck Mumford and Chris Garcin teamed up with the goal of creating products that could keep up with their skiing, partying, and extreme lifestyles. Pit Viper has since become an iconic American brand that designs, manufactures, and sells stylish performance gear, eyewear, sunglasses, apparel, and accessories (collectively, the "Pit Viper Products") which reflect Pit Viper's basic principle of functional and fun products for everyone.

6. Pit Viper is known for combining striking style and design with optimal quality in every detail to make highly desired products that can be sat on, shot at, and run over, while still maintaining their function and aesthetic quality. Pit Viper Products are made to withstand extreme conditions while staying at the forefront of fashion.

7. The Pit Viper brand is a multi-million-dollar brand and Pit Viper spends considerable resources marketing and protecting it.

8. Pit Viper is the owner of numerous trademarks including PIT VIPER and [logo] (collectively, with the trademarks listed in the below chart, the "PIT VIPER Trademarks"). Pit Viper has continuously sold Pit Viper Products under its trademarks for many years. As a result of its long-standing use, Pit Viper owns common law trademark rights in its PIT VIPER Trademarks. Pit Viper has built substantial goodwill in and to its PIT VIPER Trademarks. The PIT VIPER Trademarks are famous and valuable assets of Pit Viper.

9. In addition to common law trademark rights, Pit Viper has registered several of its PIT VIPER Trademarks with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark |
|---|---|
| 6,363,262 | PIT VIPER |
| 6,924,829 | BRAPSTRAP |
| 7,008,040 | FLIP-OFFS |
| 7,014,155 | LIFT-OFFS |
| 7,014,156 | THE EXCITERS |
| 6,980,093 | DOUBLE WIDE |
| 6,980,094 | SINGLE WIDE |
| 6,995,695 | FULL TURBO |
| 6,995,697 | THE MIAMI NIGHTS |
| 6,995,698 | THE 1993 |
| 7,078,584 | DEMAND RESPECT & AUTHORITY |
| 6,363,259 | *PIT VIPER (stylized logo)* |
| 6,903,760 | *sunglasses design mark* |
| 6,903,761 | *sunglasses design mark* |

10. The above U.S. registrations for the PIT VIPER Trademarks are valid, subsisting, and in full force and effect. The registrations for the PIT VIPER Trademarks constitute *prima*

4

*facie* evidence of their validity and of Pit Viper's exclusive right to use the PIT VIPER Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed PIT VIPER Trademarks are attached hereto as **Exhibit 1**.

11. Pit Viper has continuously used the PIT VIPER Trademarks in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Pit Viper Products since their respective dates of first use as noted on the federal trademark registration certificates.

12. Due to Pit Viper's longstanding use of its marks, extensive sales, and significant advertising and promotional activities, the PIT VIPER Trademarks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States, including in Illinois and this Judicial District.

13. The PIT VIPER Trademarks are distinctive when applied to the Pit Viper Products, signifying to consumers that the products originate from Pit Viper and are manufactured to Pit Viper's high-quality standards. Whether Pit Viper manufactures the products itself or licenses others to do so, Pit Viper has ensured that products bearing its trademarks are manufactured to the highest quality standards.

14. Pit Viper Products branded under the PIT VIPER Trademarks have been widely accepted by the public and are enormously popular. In view of this popularity, the PIT VIPER Trademarks are famous marks.

15. Pit Viper Products are sold online via the pitviper.com website and through authorized retailers, including in the Chicago area. Sales of Pit Viper Products via the pitviper.com website are significant. The pitviper.com website features proprietary content, images, and designs exclusive to the Pit Viper brand.

**The Defendants**

16. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Pit Viper. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Pit Viper to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Pit Viper will take appropriate steps to amend the Amended Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Pit Viper brand has resulted in significant counterfeiting of the PIT VIPER Trademarks. In recent years, Pit Viper has identified many fully interactive, e-commerce stores offering Counterfeit Pit Viper Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border

Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

U.S. bank accounts and, on information and belief, have sold Counterfeit Pit Viper Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Pit Viper has not licensed or authorized Defendants to use any of its PIT VIPER Trademarks, and none of the Defendants are authorized retailers of genuine Pit Viper Products.

22. Many Defendants also deceive unknowing consumers by using the PIT VIPER Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Pit Viper Products. Other e-commerce stores operating under the Seller Aliases omit using PIT VIPER Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Pit Viper Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Pit Viper Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Pit Viper Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Pit Viper Products were manufactured by and come from a common source and that Defendants are interrelated.

26. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Pit Viper's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move

funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Pit Viper. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Pit Viper Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Pit Viper, have jointly and severally, knowingly and willfully used and continue to use the PIT VIPER Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Pit Viper Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the PIT VIPER Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Pit Viper Products, including the sale of Counterfeit Pit Viper Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Pit Viper.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. Pit Viper hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered PIT VIPER Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The PIT VIPER Trademarks are highly distinctive marks. Consumers have

come to expect the highest quality from Pit Viper Products offered, sold, or marketed under the PIT VIPER Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the PIT VIPER Trademarks without Pit Viper's permission.

33. Pit Viper is the exclusive owner of the PIT VIPER Trademarks. Pit Viper's United States Registrations for the PIT VIPER Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Pit Viper's rights in the PIT VIPER Trademarks and are willfully infringing and intentionally using counterfeits of the PIT VIPER Trademarks. Defendants' willful, intentional, and unauthorized use of the PIT VIPER Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Pit Viper Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Pit Viper has no adequate remedy at law and, if Defendants' actions are not enjoined, Pit Viper will continue to suffer irreparable harm to its reputation and the goodwill of its well-known PIT VIPER Trademarks.

36. The injuries and damages sustained by Pit Viper have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Pit Viper Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37. Pit Viper hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Pit Viper Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Pit Viper or the origin, sponsorship, or approval of Defendants' Counterfeit Pit Viper Products by Pit Viper.

39. By using the PIT VIPER Trademarks in connection with the Counterfeit Pit Viper Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Pit Viper Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Pit Viper Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Pit Viper has no adequate remedy at law and, if Defendants' actions are not enjoined, Pit Viper will continue to suffer irreparable harm to its reputation and the goodwill of its Pit Viper brand.

## PRAYER FOR RELIEF

WHEREFORE, Pit Viper prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the PIT VIPER Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing,

      advertising, offering for sale, or sale of any product that is not a genuine Pit Viper Product or is not authorized by Pit Viper to be sold in connection with the PIT VIPER Trademarks;

  b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Pit Viper Product or any other product produced by Pit Viper that is not Pit Viper's or not produced under the authorization, control, or supervision of Pit Viper and approved by Pit Viper for sale under the PIT VIPER Trademarks;

  c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Pit Viper Products are those sold under the authorization, control, or supervision of Pit Viper, or are sponsored by, approved by, or otherwise connected with Pit Viper;

  d. further infringing the PIT VIPER Trademarks and damaging Pit Viper's goodwill; and

  e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Pit Viper, nor authorized by Pit Viper to be sold or offered for sale, and which bear any of Pit Viper's trademarks, including the PIT VIPER Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Pit Viper's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, DHgate, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with

Defendants in connection with the sale of counterfeit and infringing goods using the PIT VIPER Trademarks;

3) That Defendants account for and pay to Pit Viper all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the PIT VIPER Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Pit Viper be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PIT VIPER Trademarks;

5) That Pit Viper be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 11th day of March 2024.           Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Trevor C. Talhami
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
ttalhami@gbc.law

*Counsel for Plaintiff Pit Viper, LLC*

14